## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| DAMASO MALDONADO, DANIEL SHEPARD, and DONNEL COBY, individually and on behalf of all others similarly situated, | : : : : : : | |
| Plaintiff, | : : | Case No: 1:24-cv-00090 |
| v. | : : | Hon. Robert J. Jonker |
| WK  KELLOGG  CO  and KELLANOVA, jointly and severally, | : : : | Mag. Sally J. Berens |
| Defendants. | : : | |

### PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT

Plaintiffs Damaso Maldonado, Daniel Shepard, and Donnel Coby, jointly by and through their attorneys and without opposition from Defendants, WK Kellogg Co and Kellanova ("Defendants"), respectfully move this Court for entry of a proposed Order Approving the FLSA Settlement, attached hereto as Exhibit A, which: (i) grants this motion; (ii) approves the Parties' Settlement Agreement; and (iii) dismisses this action with prejudice and without further costs or fees to any party.  In support of this Unopposed Motion, Plaintiff states as follows:

1.      The instant action was filed on January 30, 2024, asserting a single claim for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

2.      In general, Plaintiffs alleged that Defendant violated the FLSA by failing to pay Plaintiff and the putative collective members the proper overtime rate when calculating their regular rate of pay in connection with various forms of non-discretionary compensation earned in weeks during which they worked overtime hours. [ECF No. 1].

1

3.      On April 22, 2024, Plaintiff Damaso Maldonado filed his First Amended Complaint which added two additional named plaintiffs and addressed various foundational challenges raised in Defendants' March 22, 2024, Motion for More Definite Statement. [ECF No. 31].

4.      Thereafter, the Parties held multiple meet and confer conferences during which they discussed, among other things: the geographic scope of Plaintiff's claims; the viability of Plaintiff's claims; issuance of collective notice; the voluntary exchange of pay and timekeeping data to analyze the potential damages; and the possibility of exploring resolution via direct negotiations or with the assistance of a mediator.

5.      Ultimately, the Parties decided to proceed to mediation and to exchange in informal discovery (including pay and timekeeping data) to identify the measure of damages related to Plaintiffs' claims and to explore resolution. Plaintiffs retained an economic expert to analyze the data and to prepare a comprehensive damage analysis.

6.      On September 6, 2024, the Parties attended mediation with nationally recognized mediator Michael Russell in Nashville, Tennessee. During the mediation the Parties negotiated Plaintiffs' FLSA regular rate claims as well as potential claims related to alleged failure to pay for certain off-the-clock time pertaining to: 1) pre-shift COVID temperature checks occurring at Defendants' facilities between January 2021 and May 2022; and 2) alleged donning and doffing occurring at Defendant Kellanova's Wyoming, Michigan; Zanesville, Ohio; and Jackson, Tennessee facilities.

7.      After a full day mediation, the Parties were able to reach a resolution as to Plaintiffs' regular rate claims.

8.      After the mediation and through January 2025 the Parties engaged in negotiations – direct and with the assistance of Mediator Russell – designed to resolve Plaintiffs' off-the-clock claims.  The Parties negotiations consisted of dozens of emails, telephone calls and meetings.

9.      On December 31, 2024, Defendant WK Kellog Co. filed its Answer and Affirmative Defenses (stating eleven distinct affirmative defenses) to Plaintiffs' First Amended Complaint. [ECF No. 47].

10.      On December 31, 2024, Defendant Kellanova filed a Motion to Dismiss seeking dismissal of Plaintiffs' First Amended Complaint based on a lack of personal jurisdiction. [ECF No. 46].

11.      The Parties ultimately reached a settlement in principle on January 27, 2025.  Over the next several months, the Parties engaged the Court to determine its preference as to the court approval process and negotiated and finalized the long-form settlement agreement, which is now before the Court for approval. (Exh. B; hereinafter the "Settlement Agreement").

12.      Plaintiffs now seek this Court's approval of the Parties' Settlement Agreement and dismissal of the case with prejudice.

13.      The Parties agree that the negotiated voluntary compromise is appropriate because the Parties recognize the costs and their respective risks associated with proceeding with lengthy, expensive, and contentious litigation.

14.       The detailed and material terms of the Settlement Agreement are discussed in the attached Brief in Support of the Unopposed Motion to Approve the FLSA Settlement.

15.      In sum, the Settlement Agreement provides that Defendants shall pay a Gross Settlement Amount of $1,475,000, inclusive of: (i) the issuance of monetary payments (Individual Settlement Payments) to putative collective members (Eligible Employees); (ii) Service Awards to the Named Plaintiffs; and (iii) payment for Attorneys' Fees and Litigation Expenses (as approved by this Court and including those in connection with securing Court approval of the Settlement Agreement).

16.    The Parties agree that the Settlement Agreement is a fair and reasonable resolution and compromise of a *bona fide* dispute over issues arising under Plaintiffs' FLSA claim.

17.    Thus, Plaintiffs respectfully asks this Court to approve the Parties' Settlement Agreement in its entirety and to dismiss this case with prejudice and without any costs or fees to any party, except as provided in the Settlement Agreement.

WHEREFORE, Plaintiffs move this Court for entry of the proposed Order Approving the Settlement Agreement, attached hereto as Exhibit A, which: (i) grants this motion; (ii) approves the Parties' Settlement Agreement; and (iii) dismisses this action with prejudice and without further costs or fees to any party.

Date: June 30, 2025                                  Respectfully submitted,

                                                     */s/ Kevin J. Stoops*
                                                     Kevin J. Stoops (P64371)
                                                     **SOMMERS SCHWARTZ, P.C.**
                                                     One Town Square, 17th Floor
                                                     Southfield, Michigan 48076
                                                     (248) 355-0300
                                                     kstoops@sommerspc.com
                                                     jyoung@sommerspc.com

                                                     *Attorneys for Plaintiff and the Proposed
                                                     Collective*

4

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
| DAMASO MALDONADO, DANIEL SHEPARD, and DONNEL COBY, individually and on behalf of all others similarly situated, | : : : : : | |
| | : | Case No: 1:24-cv-00090 |
| Plaintiff, | : : | |
| | : | Hon. Robert J. Jonker |
| v. | : : | |
| | : | Mag. Sally J. Berens |
| WK   KELLOGG   CO   and KELLANOVA, jointly and severally, | : : | |
| | : | |
| Defendants. | : : | |

**<u>BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
APPROVAL OF FLSA SETTLEMENT</u>**

# TABLE OF CONTENTS

**FACTUAL BACKGROUND**

I.   **Introduction**................................................................................................1

II.  **Settlement Terms and Documents** ...........................................................2

    A.  Individual Settlement Payments ..................................................3

    B.  Service Award.............................................................................3

    C.  Attorneys' Fees, Litigation Expenses and Settlement Administration Fees..........3

    D.  Release of Claims ......................................................................3

    E.  Notice of Settlement of Lawsuit ................................................4

**LAW AND ARGUMENT**

I.   **The Settlement is a Fair and Reasonable Resolution of a Bona Fide Dispute** ......5

    A.  No Indicia of Fraud or Collusion Exists........................................6

    B.  The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval .................................................................6

    C.  Investigation Was Sufficient to Allow the Parties to Act Intelligently ...............8

    D.  The Risks of Litigation Favor Approval .......................................9

    E.  Counsel and Named Plaintiffs Favor the Agreement .......................9

    F.  Absent Class Members' Reaction ..............................................10

    G.  Settlement is in the Public Interest............................................10

II.  **The Settlement Distributions are Fair, Reasonable, and Adequate** .................11

    A.  Plaintiffs' Counsel's Requests for Fees and Litigation Expenses are Reasonable and Appropriate in this Case....................................................................11

        1.  The Court Should Adopt the Lodestar Approach.............................12

        2.  The *Ramey* Factors......................................................................14

    B.  The Service Awards to the Named Plaintiffs are Fair and Reasonable .............17

    C.  The Settlement Notice is Adequate ...........................................20

## <u>TABLE OF AUTHORITIES</u>

*Arledge v. Domino's Pizza, Inc.*
  2018 WL 5023950 (S.D. Ohio Oct. 17, 2018) .......................................................... 19

*Arp*
  2020 U.S. Dist. LEXIS 207512 (S.D. Ohio Nov. 5, 2020) ...................................... 16

*Bert v. AK Steel Corp.*
  2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) ........................................................ 18

*Blum v. Stenson*
  465 U.S. 886 (1984) ............................................................................................... 13

*Boeing Co. v. Van Gemert*
  444 U.S. 472 (1980) ............................................................................................... 12

*Bowling v. Pfizer, Inc.*
  102 F.3d 777 (6th Cir. 1996) ................................................................................. 13

*Bozak v. FedEx Ground Package Sys., Inc.*
  2014 WL 3778211 (D. Conn. July 31, 2014) ......................................................... 19

*Brotherton v. Cleveland*
  141 F. Supp. 2d 894 (S.D. Ohio 2001) .................................................................. 10

*Castillo v. Morales, Inc.*
  2015 WL 13021899 (S.D. Ohio Dec. 22, 2015).................................................... 19

*Connectivity Sys. Inc. v. Nat'l City Bank*
  2011 WL 292008 (S.D. Ohio Jan. 26, 2011)................................................... 10, 13

*Crawford v. Lexington-Fayette Urban County Government*
  2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) ..................................................... 5, 11

*Cruz v. Don Pancho Mkt., LLC*
  2016 WL 4531142 (W.D. Mich. Aug. 23, 2016) ..................................................... 5

*Dallas v. Alcatel-Lucent USA, Inc.*
  2013 WL 2197624 (E.D. Mich. May 20, 2013) ..................................................... 17

*Fegley v. Higgins*
  19 F.3d 1126 (6th Cir. 1994) ........................................................................... 11, 12

*Fisher v. Stolaruk Corp.*
  648 F. Supp. 486 (E.D. Mich. 1986) ...................................................................... 11

*Frank v. Eastman Kodak Co.*
  228 F.R.D. 174 (W.D.N.Y. 2005) .......................................................................... 18

*Franks v. Kroger Co.*
  649 F.2d 1216 (6th Cir. 1981) ............................................................................... 10

*Gascho v. Glob. Fitness Holdings, LLC*
  822 F.3d 269 (6th Cir. 2016) ................................................................................. 12

ii

*Gentrup v. Renovo Servs., LL*
   2011 WL 2532922 (S.D. Ohio June 24, 2011) ............................................... 20

*Granada Invs., Inc. v. DWG Corp.*
   962 F.2d 1203 (6th Cir. 1992) ............................................................................ 5

*Griffin v. Flagstar Bancorp. Inc.*
   2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) .............................................. 17

*Hoffmann-La Roche Inc. v. Sperling*
   493 U.S. 165 (1989) ........................................................................................ 20

*In re Cardinal Health Inc. Sec. Litig.*
   528 F. Supp. 2d 752 (S.D. Ohio 2007) ..................................................... 12, 14

*In re Cardizem CD Antitrust Litig.*
   218 F.R.D. 508 (E.D. Mich. Oct. 10, 2003) .................................................. 17

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*
   248 F.R.D. 483 (E.D. Mich. 2008) ................................................................. 10

*In re DPL, Inc., Sec. Litig.*
   307 F. Supp. 2d 947 (S.D. Ohio 2004) ..................................................... 12, 13

*In re Gen. Tire & Rubber Co. Sec. Litig.*
   726 F.2d 1075 (6th Cir. 1984) .......................................................................... 9

*In re Packaged Ice Antitrust Litig.*
   2012 WL 5493613 ............................................................................................ 17

*In re Prandin Direct Purchaser Antitrust Litig.*
   2015 WL 1396473 (E.D. Mich. 2015) ............................................................ 13

*In re Sulzer Orthopedics, Inc.*
   398 F.3d 778 (6th Cir. 2005) .......................................................................... 13

*In re Washington Power Supply System Sec. Litig.*
   19 F.3d 1291 (9th Cir. 1994) .......................................................................... 13

*IUE-CWA v. General Motors Corp.*
   238 F.R.D. 583 (E.D. Mich. 2006) ................................................................... 5

*Johnson v. Midwest Logistics Sys., Ltd.*
   2013 U.S. Dist. LEXIS 74201 (S.D. Ohio May 24, 2013) ............................ 14

*Lowther v. AK Steel Corp.*
   2012 WL 6676131 (S.D. Ohio Dec. 21, 2012) .............................................. 16

*Maddrix v. Dize*
   153 F.2d 274 (4th Cir. 1946) .......................................................................... 12

*Michigan Window Cleaning Co. v. Martino*
   173 F.2d 466 (6th Cir. 1949) .......................................................................... 11

*Mitchell v. Indep. Home Care, Inc.*
   2019 WL 696941 (S.D. Ohio Feb. 20, 2019) ................................................. 15

*Moore v. Aerotek, Inc.*
  2017 WL 2838148 (S.D. Ohio June 30, 2017) ...................................................... 15

*Mullins v. S. Ohio Pizza, Inc.*
  2019 WL 275711 (S.D. Ohio Jan. 18, 2019) ........................................................ 19

*NorCal Tea Party Patriots v. Internal Revenue Serv.*
  2018 WL 3957364 (S.D. Ohio Aug. 17, 2018) ..................................................... 14

*Ortiz v. Fibreboard Corp.*
  527 U.S. 815 (1999) .......................................................................................... 11

*Pieber v. SVS Vision, INC.*
  2022 WL 687248 (E.D. Mich. Mar. 8, 2022) ....................................................... 19

*Ramey v. Cincinnati Enquirer, Inc.*
  508 F. 2d 1188 (6th Cir. 1974) .................................................................... 12, 14

*Rawlings v. Prudential Properties, Inc.*
  9 F.3d 513 (6th Cir. 1993) .......................................................................... 12, 13

*Roofers, Local 307 v. G & M Roofing*
  732 F.2d 495 (6th Cir. 1984) ............................................................................ 12

*Sewell v. Bovis Lend Lease, Inc.*
  2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ...................................................... 19

*Swigart v. Fifth Third Bank*
  2014 U.S. Dist. LEXIS 94450 (S.D. Ohio July 11, 2014) ..................................... 14

*Thacker v. Chesapeake Appalachia, L.L.C.*
  695 F. Supp. 2d 521 (E.D. Ky. 2010) ................................................................ 10

*UAW v. Ford Motor Co.*
  2008 WL 4104329 (E.D. Mich. Aug. 29, 2008) ..................................................... 9

*UAW v. General Motors Corp.*
  497 F.3d 615 (6th Cir. 2007) .............................................................................. 5

*Velez v. Majik Cleaning Serv.*
  2007 WL 7232783 (S.D.N.Y. June 25, 2007) ................................................ 17, 19

*Wade v. Werner Trucking Co.*
  2014 WL 2535226 ............................................................................................ 20

*Williams v. Hooah Sec. Servs. LLC*
  2012 U.S. Dist. LEXIS 40945 (W.D. Tenn. Mar. 26, 2012) ................................. 11

*Zambrano v. Motorcity Burger Co.*
  2017 WL 1477111 (E.D. Mich. Apr. 25, 2017) ..................................................... 5

## **STATUES**

29 U.S.C. § 201 ............................................................................................................ 1

29 U.S.C. § 216(b) ..................................................................................................... 11

## FACTUAL BACKGROUND

### I.    Introduction

On January 30, 2024, Plaintiff Damaso Maldonado filed his Complaint, initiating this action on behalf of himself and all other persons similarly situated, seeking damages for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* [ECF No. 1]. In general, he alleged that Defendant violated the FLSA by failing to pay him and the putative collective members the proper overtime rate when calculating their regular rate of pay in connection with various forms of non-discretionary compensation earned in weeks during which they worked overtime hours. [ECF No. 1]. On April 22, 2024, Plaintiff Maldonado filed his First Amended Complaint, which added two additional named plaintiffs and addressed various foundational challenges raised in Defendants' March 22, 2024, Motion for More Definite Statement. [ECF No. 31].

Thereafter, the Parties held multiple meet-and-confer conferences during which they discussed, among other things: the geographic scope of Plaintiffs' claims; the viability of Plaintiffs' claims; issuance of collective notice; the voluntary exchange of pay and timekeeping data to analyze the potential damages; and the possibility of exploring resolution via direct negotiations or with the assistance of a mediator. Ultimately, the Parties decided to proceed to mediation and to exchange in informal discovery (including pay and timekeeping data) to identify the measure of damages related to Plaintiffs' claims and to explore resolution. Plaintiffs retained an economic expert to analyze the data and to prepare a comprehensive damage analysis.

On September 6, 2024, the Parties attended mediation with nationally recognized mediator Michal Russell in Nashville, Tennessee. During the mediation the Parties negotiated Plaintiffs' FLSA regular rate claims, as well as potential claims related to alleged failure to pay for certain

off-the-clock time pertaining to: 1) pre-shift COVID temperature checks occurring at Defendants' facilities between January 2021 and May 2022; and 2) alleged donning and doffing occurring at Defendant Kellanova's Wyoming, Michigan; Zanesville, Ohio; and Jackson, Tennessee facilities. After a full day mediation, the Parties were able to reach a resolution as to Plaintiffs' regular rate claims.

After the mediation and through January 2025 the Parties engaged in negotiations – direct and with the assistance of Mediator Russell – designed to resolve Plaintiffs' off-the-clock claims. The Parties' negotiations consisted of dozens of emails, telephone calls and meetings. The Parties ultimately reached a settlement in principle on January 27, 2025.  Over the next several months, the Parties engaged the Court to determine its preference as to the court approval process and negotiated and finalized the long-form settlement agreement, which is now before the Court for approval. (Exh. B; hereinafter the "Settlement Agreement").

Plaintiffs now seek this Court's approval of the Parties' Settlement Agreement and dismissal of the case with prejudice.

## II.    Settlement Terms and Documents

Plaintifsubmit the following settlement documents for the Court's approval or entry:

Exhibit A:      (Proposed) Order Approving FLSA Settlement

Exhibit B:      Settlement Agreement (with exhibits)

Exhibit C:      Declaration of Counsel Kevin J. Stoops

Exhibit D:      Declaration of Counsel Jonathan Melmed

Exhibit E:      Notice to Collective Members

The Gross Settlement Amount is $1,475,000, which is inclusive of payment for: (i) the issuance of monetary payments in a cumulative amount of $915,358.18 (Individual Settlement

Payments) to approximately 11,000 collective members (Eligible Employees); (ii) a Service Awards to the Named Plaintiffs; (iii) payment for Attorneys' Fees and Litigation Expenses (as approved by this Court and including those in connection with securing Court approval of the Settlement Agreement); and (iv) payment of settlement administration fees.

### A.  Individual Settlement Payments

The Individual Settlement Payments are calculated proportionally as to each Eligible Employee's alleged damages during the Relevant Period. (*Id.* at § F). The individual Settlement Payments will be allocated fifty percent (50%) to back wages (paid via an IRS Form W-2) and fifty percent (50%) to liquidated damages (paid via IRS Form 1099). (*Id.* at § G(2)).

### B.  Service Award

Defendants will pay service awards in the amount of $5,000 each to Named Plaintiffs Damaso Maldonado, Daniel Shepard, and Donnel Coby, in addition to their Individual Settlement Payments, for their service as Named Plaintiffs. (Exh. B, § F(5)).

### C.  Attorneys' Fees, Litigation Expenses and Settlement Administration Fees

Plaintiffs' Counsel shall make an application to the Court for an award of attorneys' fees in the amount of $491,666.66, plus an additional reasonable amount for the litigation expenses in the amount of $27,778.98. (Exh. B, § F(6)). Any amount of the Attorneys' Fees and Litigation Expenses not approved by the Court shall be included as part of the Net Settlement Fund. (*Id.*).

The Settlement Agreement also contemplates settlement administration fees in an amount not to exceed $31,300.  (*Id.* at § D(1)).

### D.  Release of Claims

The negotiating of a settlement check by any Eligible Employee makes them a Participating Plaintiff and provides sufficient consideration for their release of claims. (Exh. B, § G(4)). Eligible Employees will have one hundred eighty (180) days after the Settlement Notice Packets are mailed

in which to deposit or otherwise negotiate their settlement checks. (*Id.*). However, settlement checks not cashed or negotiated within 180 days may be reissued once if the Parties mutually agree, or if the Settlement Administrator determines that there is good cause to do so with respect to any particular settlement check(s). (*Id.*). If any Eligible Employee does not negotiate their settlement check within 180 days of issuance, or thirty (30) days after reissuance of the settlement check, whichever is later, the funds will be retained by Defendant. (*Id.*).

The Eligible Employees will be subject to a specific release of wage and hour claims arising between January 30, 2021 through January 27, 2025. (*Id.* at § H(1)).  Each Individual Settlement Payment issued to an Eligible Employees will contain the following release language on the back of the check:

> As set forth more fully in the Notice received herewith, I knowingly and voluntarily release, waive, and discharge WK Kellogg Co and Kellanova, and all other Released Parties, from any and all federal, state, and local wage-and-hour claims of any nature whatsoever that accrued during my employment working at Kellogg, WK Kellogg Co, and/or Kellanova between January 30, 2021 and January 27, 2025, including, but not limited to, all federal, state, and local claims for overtime, minimum wage, and related penalties, interest, liquidated damages, attorneys' fees, and costs.

(*Id.* at § H(3)).

### E.  Notice of Settlement of Lawsuit

The Parties will retain a third-party entity (the "Settlement Administrator") to perform the duties necessary to send "Settlement Notices" and Individual Settlement payments to each Eligible Employee. "Settlement Notice" means the written notification that each Eligible Employee will receive, which explains the settlement and their right to participate, a copy of which is attached as Exhibit A to the Agreement**.** (*Id.* at Exh. E).  The Settlement Notice and Individual Settlement Payment shall be mailed by the Settlement Administrator to each Eligible Employee within forty-

two (42) days after the entry of an Order by this Court approving the Parties' Settlement. (Exh. B at § G(1)).

## LAW AND ARGUMENT

### I.    The Settlement is a Fair and Reasonable Resolution of a Bona Fide Dispute.

It is generally accepted in that "[j]udicial approval of settlement agreements in FLSA cases is necessary for an agreement to be enforceable." *Zambrano v. Motorcity Burger Co*., 2017 WL 1477111, at *2 (E.D. Mich. Apr. 25, 2017); *see also, Cruz v. Don Pancho Mkt., LLC*, 2016 WL 4531142, at *2 (W.D. Mich. Aug. 23, 2016) (internal citation omitted).  As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, *3 (E.D. Ky. Oct. 23, 2008).

The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)).

In considering the seven factors, the district court may choose to "consider only factors that are relevant to the settlement and may weigh particular factors according to the demands of the case." *IUE-CWA v. General Motors Corp.,* 238 F.R.D. 583, 594-95 (E.D. Mich. 2006). As shown below and in the Stoops Declaration (Exh. C), the standard supports the Settlement Agreement's approval.

### A.  No Indicia of Fraud or Collusion Exists

Plaintiffs' Counsel has extensive experience litigating claims under the FLSA. (*See generally*, Exhs. C and D). The Agreement was achieved after arms-length and good faith negotiations between the Parties, assisted with damage analysis performed by an expert economist and the services of nationally recognized wage-and-hour mediator Michael Russell. As such, there is no indicia of fraud or collusion.

### B.  The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval

The policy favoring the settlement of class actions and other complex cases applies forcefully here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming.

Defendants claim that even if Plaintiffs could succeed on the merits (which it contends Plaintiffs cannot), Plaintiffs cannot prove a willful violation of the law, and thus, no wages would be owed for the third year of the three-year limitations period. In addition, the Parties disagree as to: (i) whether final collective certification would be granted; (ii) whether liquidated damages would be awarded; and (iii) whether Plaintiffs could establish an underlying violation of the FLSA.

Additionally, Defendants raised numerous defenses to Plaintiffs' claims including, but not limited to the following:

    a.  Various forms of incentive compensation paid by Defendant to the collective members are discretionary and do not need to be computed into the FLSA regular rate.

    b.  The vast majority of Defendants' locations are covered by collective bargaining agreements, and those agreements bar Plaintiffs' regular rate and off-the-clock claims.

    c.  The collective members were paid double time in connection with various shifts, and Defendant is allowed to offset the double time payments against alleged regular rate damages.

     d.   Plaintiffs' and the collective members did not perform any compensable work off-the-clock.

     e.   The time for which Plaintiffs and the collective members sought compensation was not compensable under the Portal-to-Portal Act.

     f.   Any work that was performed off-the-clock is *de minimis.*

     g.   Defendants maintain written employment policies, which prohibit all off-the-clock work.

     h.   Defendants instruct and require employees to report any suspected violation of Defendants' policies prohibiting off-the-clock work.

     i.   Defendants will tender employees to testify that they did not work off-the-clock and/or that the alleged off-the-clock work is exaggerated.

     j.   The putative collective members engaged in personal activities at the beginning of their shifts.

     k.   Plaintiffs' allegations regarding the amount of off-the-clock time worked grossly overstate how long it takes to perform the tasks they describe.

     l.   The putative collective members will not be able to prove their off-the-clock time because no records exist identifying the exact amount of time they spent each shift performing the off-the-clock duties.

     m.   Plaintiffs and all other collective members were paid for all work performed.

(Exh. C, Stoops Decl. at ¶ 31).

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling. The Parties would need to engage in extensive briefing and/or oral argument regarding collective certification, decertification, and summary judgment. Discovery would be expensive and time-consuming, given the continued factual and legal disputes between the Parties. It is very likely that this litigation would extend for another two to three years and cost the parties $250,000 to $500,000 (or more) each in attorneys' fees and expenses. (*Id.* at ¶ 32).

The Settlement Agreement, by contrast, provides prompt, efficient, and substantial relief to Plaintiffs and all Eligible Employees, and amplifies the benefits of that relief through the economies of collective resolution.

### C.  Investigation Was Sufficient to Allow the Parties to Act Intelligently

The Parties engaged in substantial investigation prior to negotiating the Settlement Agreement. Relevant information was exchanged including exhaustive data regarding the Eligible Employees' time and payroll records. Specifically, Plaintiffs' Counsel reviewed and analyzed the following materials:

a.  Information pertaining to the number of putative collective members employed by Defendants during the statute of limitations period applicable to the case, along with metrics related to: rate of pay; dates of employment; location worked; hours worked per week; total weeks worked; total shifts worked; average hours worked per week; and percentage of weeks worked that equaled or exceeded 40 hours;

b.  Data modeling and related statistics identifying off-the-clock work by the putative collective members;

c.  Data modeling and damage analysis related to alleged regular rate violations;

d.  Voluminous time and pay records;

e.  Video footage related to clock-in and pre-shift activities engaged in by putative collective members;

f.  Opt-in survey results and data; and

g.  Documents provided to counsel by the Named and Opt-in Plaintiffs.

(Exh. C, Stoops Decl. at ¶ 24).

Additionally, the Parties' counsel conducted numerous conferences and exchanged correspondence on Plaintiffs' claims, Defendants' defenses, and the scope of discovery for mediation and beyond. (*Id.* at ¶ 25).

To evaluate damages and negotiate settlement, Plaintiff's Counsel retained expert economist Mellisa Daniel of EconONE Research, Inc. Ms. Daniel, with Plaintiffs' Counsel's assistance, prepared a time-consuming and complicated damage analysis of all claims at issue in this case. (*Id.* at ¶ 33).

There can be no question that all aspects of the dispute are well-understood, and were competently negotiated, by both sides.

### D. The Risks of Litigation Favor Approval

"The likelihood of success . . . provides a gauge from which the benefits of the settlement must be measured." *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984). Given the factual and legal complexity of this matter, it is difficult to assess Plaintiffs' likelihood of success at trial. Plaintiffs' claims are based on disputed issues of fact and law, and Plaintiffs' success at trial is far from guaranteed. In sum, although Plaintiffs assert that the claims are meritorious, the action certainly is not without risk. This factor thus weighs in favor of approval.

Counsel for both Parties believe in the merits of their respective clients' positions but nonetheless recognize that litigation is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raises multiple defenses to Plaintiffs' claims, and the outcome of those defenses is uncertain as well. Continued litigation would be risky for all and at each stage, including certification, decertification, summary judgment, and trial.

Even if Plaintiffs succeed on the merits of their claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree. A jury could find that Defendant acted in good faith – a finding of no willfulness would mean a one-third reduction in collective wide damages. Additionally, a jury may decide to not award any liquidated damages. Any of these scenarios could result in a monetary award of less than the amount obtained through this settlement.

### E.  Counsel and Named Plaintiffs Favor the Agreement

The endorsement of experienced class counsel "is entitled to significant weight, and supports the fairness of the class settlement." *UAW v. Ford Motor Co.*, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008). Here, Plaintiffs' Counsel believes the settlement is fair, reasonable,

and adequate. Plaintiffs' Counsel has extensive experience in wage-and-hour class and collective actions, has acted in good faith, and has vigorously represented their client in negotiating the settlement. (*See* Exhs. C and D). The Named Plaintiffs have been fully informed and involved in the settlement process and agree to the Settlement Agreement. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 533 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).

### F.  Absent Class Members' Reaction

The absence of class member objections is indicative of class support of a settlement. *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *6 (S.D. Ohio Jan. 26, 2011); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498-99 (E.D. Mich. 2008) (small number of opt-out requests indicative of the adequacy of the settlement). In the present case, unlike a Rule 23 Class Action settlement, there are no "absent" class members, and each Eligible Employee has the option of opting into this matter. The Eligible Employees are not bound by the Settlement unless they negotiate the Individual Settlement Payment they are issued. As such, any members who choose not to participate are free to do so without taking any action or making any objection.

### G.  Settlement is in the Public Interest

"[T]he law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). The Settlement ends complex litigation that has been pending for nearly one and a half years and provides substantial relief to the Eligible Employees and avoids protracted, costly litigation. *See Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 905-06 (S.D. Ohio 2001). The Settlement Agreement's terms are equitable and provide a reasonable resolution to the action. Continued litigation would increase the attorneys' fees and costs, with no guarantee of a larger verdict in favor of the potential putative plaintiffs. In fact,

rulings by this Court or a jury verdict could result in a lower recovery for the Eligible Employees if this Court or a jury were to rule in Defendant's favor on disputed fact and law issues.

## II.    The Settlement Distributions are Fair, Reasonable, and Adequate

As a part of the scrutiny applied to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urb. Cnty. Gov't*, 2008 WL 4724499, at \*9 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)). All components of the proposed distribution are proper and reasonable, and the settlement is fair, reasonable, and adequate for Plaintiffs and the Eligible Employees.

### A. Plaintiffs' Counsel's Requests for Fees and Litigation Expenses Reasonable and Appropriate in this Case.

Section 216(b) of the FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  Payment of attorneys' fees are *mandatory* under the FLSA, the amount of which has carries no relation to the amount of damages ultimately recovered by a plaintiff.  *See e.g., Williams v. Hooah Sec. Servs. LLC*, 2012 U.S. Dist. LEXIS 40945, \*4 (W.D. Tenn. Mar. 26, 2012) ("the amount of attorney's fees may exceed the amount of damages awarded to plaintiffs given the nature and purpose of the FLSA . . .") (*citing Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994); *Fisher v. Stolaruk Corp.*, 648 F. Supp. 486, 487 (E.D. Mich. 1986) ("An award of attorney fees [under the FLSA] may exceed the amount in controversy.") (*citing Michigan Window Cleaning Co. v. Martino*, 173 F.2d 466 (6th Cir. 1949)). The FLSA's attorneys' fees provision seeks to ensure "effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) (internal quotation marks omitted). In calculating the fee award, the Court should not put undue emphasis on the amount of the plaintiffs' recovery because an attorney fee award in a FLSA case "encourage[s] the vindication of congressionally

identified policies and rights." *Id.* at 1134-35 (internal quotation marks omitted) (alteration in original). In enacting the FLSA, Congress intended that the wronged employee should receive his or her full wages "without incurring any expense for legal fees or costs." *Roofers, Local 307 v. G & M Roofing*, 732 F.2d 495, 502 (6th Cir. 1984) (*citing Maddrix v. Dize,* 153 F.2d 274 (4th Cir. 1946)).

> 1.    **The Court Should Adopt the Percentage of the Fund Approach.**

When assessing the reasonableness of a fee petition, district courts engage in a two-part analysis. See *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 760 (S.D. Ohio 2007). First, the district court determines the method for calculating the attorneys' fees: either the percentage of the fund approach[1] or the lodestar approach. *Id.* (citing *In re DPL, Inc., Sec. Litig.*, 307 F. Supp. 2d 947, 949-51 (S.D. Ohio 2004)). The district court "must make sure that [class] counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). Second, the district court must analyze and weigh the six factors described by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc*., 508 F. 2d 1188 (6th Cir. 1974).

In the Sixth Circuit, district courts have the discretion "to determine the appropriate method for calculating attorneys' fees in light of the unique characteristics of class actions in general, and the particular circumstances of the actual cases pending before the Court" using either the percentage or lodestar approach. *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d at 761

---

[1] To determine the amount of the "fund" for purposes of this analysis, courts include all amounts benefitting the class, including those amounts typically born by the class, such as attorneys' fees and notice and administration costs. As the Sixth Circuit explained, when conducting a percentage of the fund analysis, "Attorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class (which includes the 'benefit to class members,' the attorney's fees and may include costs of administration)." *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 282 (6th Cir. 2016). To determine the amount of the benefit conferred, courts look to the total amount made available to the class, rather than the amount ultimately claimed by class members. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-81 (1980).

(citing *Bowling v. Pfizer, Inc*., 102 F.3d 777, 779 (6th Cir. 1996)). In this district, "the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier." *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-CV-1119, 2011 WL 292008, at *13 (S.D. Ohio Jan. 26, 2011).

In *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that under the "common fund doctrine," a reasonable fee may be based "on a percentage of the fund bestowed to the class." The purpose of this doctrine is that "those who benefit from the creation of a fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Power Supply System Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994). District courts within the Sixth Circuit follow this rule. *See, e.g., In re Prandin Direct Purchaser Antitrust Litig*., 2015 U.S. Dist. LEXIS 5964, 2015 WL 1396473, at *4 (E.D. Mich. 2015) (granting fee award of one-third of the gross settlement fund); *In re Sulzer Orthopedics, Inc*., 398 F.3d 778, 780-82 (6th Cir. 2005) (affirming individual fee awards made from a common benefit fund based on the gross settlement amount); *Bowling v. Pfizer, Inc*., 102 F.3d 777, 779 (6th Cir. 1996) ("It is within the district court's discretion to determine the 'appropriate method for calculating attorney's fees.'") (quoting *Rawlings v. Prudential-Bache Props., Inc*., 9 F.3d 513, 516 (6th Cir.1993)); *In re DPL Inc., Sec. Litig*., 307 F. Supp. 2d 947, 951 (S.D. Ohio 2004) (noting that "the percentage of the fund method more accurately reflects the results achieved") (quoting *Rawlings*, 9 F.3d at 516).

Here, Plaintiffs' Counsel requests that the Court adopt the percentage approach to award attorneys' fees in the amount of one-third of the Gross Fund, or $491,666.66.

Performing a cross-check of the attorneys' fee request using Plaintiffs' Counsel's lodestar is optional, but it also weighs heavily in favor of granting Plaintiffs' Counsel's request for a percentage of the common fund. Awards of common-fund attorneys' fees in amounts two to three-

13

times greater than the lodestar have been found reasonable within the Sixth Circuit. *See Swigart v. Fifth Third Bank,* 2014 U.S. Dist. LEXIS 94450 (S.D. Ohio July 11, 2014) (approving multiplier of 2.57 in a FLSA case); *Johnson v. Midwest Logistics Sys., Ltd.,* 2013 U.S. Dist. LEXIS 74201 (S.D. Ohio May 24, 2013) (approving multiplier of 2.25 in a Fair Credit Reporting Act case).

To date, Plaintiffs' Counsel has incurred 417.3 hours and $216,621.80 in attorneys' fees. It is anticipated that at the conclusion of this case (including work related to settlement administration and Eligible Employee payment processing (estimated to equal additional lodestar in the range of $7,500 to $15,000), that Plaintiffs' Counsel will have accumulated a lodestar in an amount that, based on the requested fee amount, will result in a negative multiplier of 2.2 or less. (Exh. C, Stoops Decl. at ¶ 50).

## 2.    The *Ramey* Factors

To ensure a fee is reasonable, courts also analyze the six factors set forth by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). The *Ramey* factors include: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. There is not a formula for weighing the factors. *See NorCal Tea Party Patriots v. Internal Revenue Serv.*, 2018 WL 3957364, *1 (S.D. Ohio Aug. 17, 2018). Moreover, "the Court should be mindful that each case presents a unique set of circumstances and arrives at a unique settlement, and thus different factors could predominate depending on the case." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 764. Here, each of these factors weighs in favor of granting the requested fees and costs.

*First*, Plaintiffs' counsel's work resulted in a significant benefit to the Eligible Employees whereby each person will receive Individual Settlement Payment that is based on their hours worked and bonuses paid. To receive this money, the Eligible Employees only need to negotiate their settlement checks, which will be provided to them by a third-party settlement administrator, along with the Settlement Notice. Further, the Court should find that Plaintiffs' Counsel obtained an excellent result by way of procuring a settlement equal to 29.2% to 43.7% of Defendants' $3,375,538 to $5,049,546 maximum damage exposure. (Exh. C, Stoops Decl. at ¶ 35). Thus, this factor supports the proposed fee award.

*Second*, it is widely acknowledged that there is a benefit to society in ensuring that claimants with smaller claims may pool their claims and resources. The attorneys who take on class action cases enable this benefit. *See Moore v. Aerotek, Inc.*, 2017 WL 2838148, *8 (S.D. Ohio June 30, 2017) (citation omitted). The societal benefit is particularly acute in wage-and-hour cases brought on behalf of workers.  In order for attorneys to take on these cases, which, in the class and collective action setting, are complex and difficult cases, attorneys must be fully compensated for their work. Society has a stake in rewarding attorneys who achieve a result that the individual class members likely could not obtain on their own. *Id.*

*Third*, Plaintiffs' Counsel litigated this matter on a wholly contingent basis with no guarantee of recovery.  This supports the proposed fee award.

*Fourth*, a lodestar cross-check, while not required, also supports Plaintiffs' Counsel's fee request. *Mitchell v. Indep. Home Care, Inc.*, 2019 WL 696941, *7 (S.D. Ohio Feb. 20, 2019), *report and recommendation adopted*, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019). Under the lodestar calculation, the Court multiplies the number of hours reasonably expended on the

litigation by a reasonable hourly rate. Plaintiffs' Counsel have submitted detailed Declarations in support of the requested attorneys' fees and litigation expenses. (Exhs. C & D).

The Court should also be aware that Plaintiffs' Counsel's work does not end at settlement approval. Plaintiffs' Counsel frequently spends additional time, sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters, and such additional work is expected in this case.

To date, Plaintiffs' Counsel has incurred 417.3 hours and $216,621.80 in attorneys' fees. It is anticipated that at the conclusion of this case (including work related to settlement administration and Eligible Employee payment processing (estimated to equal additional lodestar in the range of $7,500 to $15,000), that Plaintiffs' Counsel will have accumulated a lodestar in an amount that, based on the requested fee amount, will result in a negative multiplier of 2.2 or less. (Exh. C, Stoops Decl. at ¶ 50).

This is well below the acceptable range. *See Lowther v. AK Steel Corp.*, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving a 3.06 multiplier and citing cases that found multipliers ranging from 4.3 to 8.5 to be reasonable); *Arp*, 2020 U.S. Dist. LEXIS 207512 at *19 (S.D. Ohio Nov. 5, 2020) (approving lodestar multiplier of 5.29). Indeed, given the nature of a contingent fee, a multiplier is generally necessary to attract competent counsel to take on the risk and expense of representing workers who are unable to afford representation on an hourly basis. This is particularly true in wage cases like this one, which are inherently complex, difficult, and expensive to litigate. The Court should note that the employer-defendant was represented by highly competent and skilled counsel. Employee-plaintiffs require equally proficient representation.

16

*Fifth*, as noted above, this was a complex wage and hour collective action. The Court should find that this factor weighs in favor of approving the fee.

*Sixth*, and finally, Plaintiffs and Defendant are represented by experienced counsel. All counsel are highly qualified and have substantial experience in federal courts and class action litigation. Counsels' professional skill and standing support approving the fee.

For these reasons, the Court should determine that the requested fees and litigation expenses are reasonable, and approve the request for attorneys' fees in the amount of $491,666.66 and litigation expenses in an amount not to exceed $27,778.98.

### B.  The Service Awards to the Named Plaintiffs are Fair and Reasonable

The Parties request approval of service awards to Plaintiffs Damaso Maldonado, Daniel Shepard, and Donnel Coby in the amount of $5,000 each. "[C]lass representatives who have had extensive involvement in a . . . litigation deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone." *Dallas v. Alcatel-Lucent USA, Inc.*, 2013 WL 2197624, at *10 (E.D. Mich. May 20, 2013); *see also Griffin v. Flagstar Bancorp. Inc.*, 2013 WL 6511860, at *9 (E.D. Mich. Dec. 12, 2013) (stating that service "awards have been approved by the Sixth Circuit").

Courts acknowledge that named plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See, e.g., In re Packaged Ice Antitrust Litig.*, 2012 WL 5493613, at *9 (service awards are "well deserved" when class representative spent "time and effort . . . all to the general benefit of the class") (citing *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. Oct. 10, 2003) (service awards "deserve[d]" when named plaintiffs "devoted a significant amount of time to the prosecution of this matter for the benefit of absent Class members")); *Velez v. Majik Cleaning Serv.*, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("in employment litigation, the plaintiff is often a former

17

or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers").

In examining the reasonableness of service awards to plaintiffs, courts consider: (1) the actions they took to protect the interests of class or collective action members, and whether those actions resulted in substantial benefit to class or collective action members; (2) the personal risk they incurred; and (3) the amount of time and effort they spent in pursuing the litigation. *See, e.g., Bert v. AK Steel Corp.*, 2008 WL 4693747, at *3 (S.D. Ohio Oct. 23, 2008). Here, Plaintiff Geer satisfies all three factors.

*First*, Plaintiff Damaso Maldonado has been involved in this action since the pre-suit investigation that gave rise to this action. (Exh. C, Stoops Decl. at ¶ 52). He participated in the pre-suit investigation, provided documents and information crucial to the evaluation and pursuit of the claims, assisted in preparation for mediation, and participated in settlement negotiations. (*Id*.) These actions resulted in substantial benefit to Eligible Employees, leading to a favorable settlement.

Likewise, Plaintiffs Daniel Shepard and Donnel Coby have been involved in this litigation since early 2024 and were crucial components of Plaintiffs' First Amended Complaint. They each participated in claims investigation, provided documents and information crucial to the evaluation of and pursuit of the claims, assisted in preparation for mediation, and participated in settlement negotiations. (*Id*.)

*Second*, each of the Named Plaintiffs undertook substantial direct and indirect risk. They agreed to bring the action in their name and agreed to testify at deposition and trial. (*Id*.) In doing so, they assumed the risk of retaliation and blacklisting. *Id*.; *see Frank v. Eastman Kodak Co.*, 228

18

F.R.D. 174, 187 (W.D.N.Y. 2005) (incentive awards are "particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending her name to the litigation, she has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers"); *see also Bozak v. FedEx Ground Package Sys., Inc.*, 2014 WL 3778211, at *9 (D. Conn. July 31, 2014) (lead plaintiff "assumed risk of retaliation"); *Velez v. Majik Cleaning Serv., Inc.*, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) (observing that named plaintiffs "exposed themselves to the prospect of having adverse actions taken against them by their former employer and former co-workers"). *See also Sewell v. Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012) ("[F]ormer employees . . . fac[ed] potential risks of being blacklisted as 'problem' employees.").

*Third*, each of the Named Plaintiffs spent significant time and effort pursuing this litigation on behalf of the Eligible Employees.

Additionally, the amount of the requested service awards are reasonable and consistent with awards that have been granted in employment class and collective actions in FLSA cases in this District and elsewhere. *See Pieber v. SVS Vision, INC.*, 2022 WL 687248, at *1 (E.D. Mich. Mar. 8, 2022) (approving service awards of $6,000 and $3,000 to representative plaintiffs where total settlement amount was $200,000); *Mullins v. S. Ohio Pizza, Inc.*, 2019 WL 275711, at *6 (S.D. Ohio Jan. 18, 2019) ($10,000 service award for each named plaintiff); *Arledge v. Domino's Pizza, Inc.*, 2018 WL 5023950, at *6 (S.D. Ohio Oct. 17, 2018) ($10,000 service award for each named plaintiff); *Castillo v. Morales, Inc.*, 2015 WL 13021899, at *5 (S.D. Ohio Dec. 22, 2015) (awarding $8,000 service payment to class representative in wage and hour case).

### C.  The Settlement Notice is Adequate

An FLSA notice must be "accurate and timely" and provide sufficient information so that putative class members "can make informed decisions as to whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The proposed Settlement Notice in this case is timely, accurate, and informative, as it provides the following information:

- The definition of the settlement collective;

- The nature of the action;

- The claims alleged;

- Information as to how to participate or not participate in the action and settlement;

- Information regarding the service awards to the Named Plaintiffs and attorneys' fees and litigation expenses;

- Binding effect of joining the action and settlement;

- The release language involved; and

- Contact information for counsel.

*See Wade v. Werner Trucking Co.*, 2014 WL 2535226, at *1 (S.D. Ohio June 5, 2014 (approving "Settlement Notice and Option Form proposed by the Parties" as "fully and accurately inform[ing] the FLSA Collective Class Members of all material elements of the Litigation and the Agreement"); *Gentrup v. Renovo Servs., LLC*, 2011 WL 2532922, at *3 (S.D. Ohio June 24, 2011) (same).

## CONCLUSION

Plaintiffs therefore move this Court for entry of the proposed Order Approving the Settlement Agreement, attached hereto as Exhibit A, which: (i) grants this motion; (ii) approves the Parties' Settlement Agreement; and (iii) dismisses this action with prejudice and without further costs or fees to any party.

20

Date: June 30, 2025                              Respectfully submitted,

                                                 /s/ Kevin J. Stoops
                                                 Kevin J. Stoops (P64371)
                                                 **SOMMERS SCHWARTZ, P.C.**
                                                 One Town Square, 17th Floor
                                                 Southfield, Michigan 48076
                                                 (248) 355-0300
                                                 kstoops@sommerspc.com
                                                 jyoung@sommerspc.com

                                                 *Attorneys for Plaintiff and the Proposed
                                                 Collective*

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2025, I electronically filed a copy of the foregoing. Notice of this filing will be sent to all parties via the Court's electronic filing system. Parties may access the filing through the Court's system.

                                                 /s/ Kevin J. Stoops
                                                 Kevin J. Stoops (P64371)