UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAMASO MALDONADO et al.,

    Plaintiffs,

v.

WK KELLOGG CO., et al.,

    Defendants.

_____/

Case No. 1:24-cv-90

HON. ROBERT J. JONKER

## ORDER

### INTRODUCTION

Plaintiffs and the proposed collective are current and former hourly employees of WK Kellogg Co. and Kellanova. They sued under the FLSA for failure to pay overtime wages. From the early days of this action, the parties and their counsel have been working toward an agreed resolution. When they reached an agreement in principle, they asked the Court to forego its ordinary review and approval process. The Court declined, so the parties now present their unopposed motion to approve their collective action settlement agreement. (ECF No. 60). The overall Settlement Agreement is fair and reasonable, and the Court approves it. And while the Court disagrees that the percentage-of-the-fund method of attorney fee calculation is the most appropriate in FLSA cases like this, it does not object to the fee award because it is reasonable under a lodestar approach. The Court therefore adopts and incorporates the terms of the Settlement Agreement (ECF No. 60-2) by reference, and the parties will submit a stipulated order dismissing the case with prejudice upon implementation of the Settlement Agreement.

**BACKGROUND**

The Settlement will cover the named plaintiffs, current opt-in plaintiffs, and all of the "Eligible Employees" who elect to participate in the Settlement by depositing their individual settlement payments. (ECF No. 60-2, PageID.470). Eligible Employees are potential opt-ins, comprising all non-exempt current and former employees at Defendants' manufacturing plants (outside of the state of California) during the relevant period of January 30, 2021 through January 27, 2025. (*Id.* at PageID.469). The parties estimate that this group consists of approximately 11,000 employees. (ECF No. 60-1, PageID.463). The gross settlement amount is $1,475,000. (ECF No. 60-2, PageID.470). Deduct from that gross figure the attorney fees, litigation expenses, and $5,000 incentive service awards to the named plaintiffs to arrive at the net settlement fund, which is then split into two parts: (1) a "Regular Rate Claims Allocation" of $505,810, and (2) an "Off-the-Clock Claims Allocation" of $969,190. (*Id.* at PageID.475). Each opt-in will receive a *pro rata* share of the net settlement fund based on the weeks worked during the relevant period, applied for each of the two fund allocations. (*Id.*). For the Off-the-Clock Allocation, non-union opt-ins will receive a 3x multiplier. (*Id.*). After all approved payments are made and the 180-day check cashing period runs, any unclaimed money will revert to Defendants. (*Id.* at PageID.478). The claims of all Eligible Employees who deposit or cash their settlement checks will be dismissed with prejudice. (*Id.*).

The attorney fee award of $491,666.66 represents one-third of the gross settlement amount. (*Id.* at PageID.476). Counsel for Plaintiffs support the fee request based on a percentage-of-recovery approach, and they also cross-check that method against a lodestar analysis. (ECF No. 60, PageID.450–51). They ask the Court to adopt the same percentage approach, arguing that their 33.33% is within the range of other fee awards approved in common fund settlement cases. (*Id.*

at PageID.450). Plaintiffs' counsel also defend their fee with a lodestar cross-check, explaining that their multiplier of less than 2.2 is below others that have been approved in this Circuit. (*Id.* at PageID.450–51). Counsel say they have expended 417.3 hours of attorney time so far, and they estimate an additional 10 to 20 hours to bring the case to conclusion. (*Id.* at PageID.451). That translates to an hourly rate of roughly $524 to $530 (or $1,100.40 to $1,113.00 with a 2.1 multiplier).

## REASONABLENESS OF OVERALL SETTLEMENT

As set forth in the Court's May 6, 2025 Order, the majority of courts, including this one, require fairness review of collective FLSA settlements. (ECF No. 57). This practice is in accord with the statutory purpose and history of the FLSA, and with the Supreme Court's interpretation of the statute. *See D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 116 (1946) ("Such a compromise thwarts the public policy . . . embodied in the [FLSA], by reducing the sum selected by Congress as proper compensation for withholding wages."); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945) ("No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purpose of the [FLSA]."). Collective action FLSA settlements are not class actions, but in assessing the fairness and reasonableness of a proposed collective action settlement, the Court sometimes evaluates the same factors in play when considering FED. R. CIV. P. 23 class settlements. Those factors include "(1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Int'l Union, United Auto, Aerospace, and Agric. Implement Workers of America v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

In the Court's view, the overall terms of the proposed settlement are fair and reasonable. Rather than overspend on litigation, the parties prioritized an early resolution and were able to maximize the dollars available for affected employees. Had they continued to litigate—and they surely could have because there were open legal issues on both sides of the case—the parties would have incurred significantly more litigation expenses and attorney fees with the risk of compromising the overall outcome for the individual employees affected, or for the employing companies.[1] The hard costs incurred to date ($27,778.98) are reasonable. (ECF No. 60, PageID.440). The proposed incentive fee of $5,000 for each of the named plaintiffs is, in the Court's review, a fair reflection of the time, responsibility, and burden for serving as the lead plaintiffs. (*Id.*). And the proposed administration of the settlement is designed to streamline notice and payments with as few transaction costs as possible. (*Id.* at PageID.441–42). The public interest is served by closing out these issues without further litigation.

There is, of course, no real way to gauge the reaction of the prospective opt-ins because they do not yet have notice. But the parties have structured a settlement process that will make opting in as easy as cashing a check, and because the Court is not aware of any individual employee

---

[1] One of the issues raised during the course of litigation was that of personal jurisdiction. This case presents a unique fact pattern of a defendant corporation (formerly, the Kellogg Company) that separated into two independent spin-off companies—one of which kept its Michigan nerve center (WK Kellogg Co.) while the other established headquarters in Illinois (Kellanova). The factual allegations of shorted pay involve at least some time before the split, meaning the nonresident Kellanova plaintiffs employed before Fall 2023 worked for a Michigan based company. In this respect, this case differs from *Canaday v. Anthem Companies, Inc.*, 9 F.4th 392 (6th Cir. 2021), because it involves a defendant that was headquartered in Michigan during part of the relevant period. The Court therefore has general personal jurisdiction and need not sift through the specific jurisdiction analysis that was central in *Canaday*. *Cf.* 9 F.4th at 396 (6th Cir. 2021) ("Anthem is based in Indiana, not Tennessee. General jurisdiction is not an option. That leaves specific jurisdiction.").

actions stemming from the same underpayment allegations, it is likely that prospective opt-ins will be favorably disposed to this arrangement.

The Court therefore has no doubt but that the overall terms of the Settlement Agreement are fair and reasonable, and the Court therefore approves it.

### ATTORNEY FEE REQUEST

For the reasons explained in its May 6, 2025 Order (ECF No. 57), the Court scrutinizes attorney fee requests in collective FLSA settlements like this because it is the only disinterested player in a position to do so. After careful consideration, the Court finds the $491,666.66 attorney fee to be fair and reasonable. Still, the proposed award presents several items that warrant further discussion from the Court.

First is the question of which method of calculation to apply. The Court has discretion to determine the best method for evaluating the fairness of the settlement award. *See, e.g.*, *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). Here, Plaintiffs call for a percentage-of-the-fund approach as the "preferred method" for common fund settlements. (ECF No. 60, PageID.450). But in the Court's view, the lodestar method is a better fit in statutory fee-shifting cases like this FLSA action. *See, e.g.*, *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010) (lodestar amount is the "guiding light of our fee-shifting jurisprudence" (quotation omitted)); *McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645, 664–65 (N.D. Ohio 2023) (applying lodestar method in FLSA collective action because it "achieves the goals of fee-shifting statutes"). The FLSA is a statute that, by its terms, mandates an award of fees to a prevailing plaintiff. 29 U.S.C. § 216(b). This is, at least in part, because the total dollar value of FLSA claims is often too low to generate a significant enough common fund to result in a reasonable fee on a percentage recovery basis. So the fee-shifting provisions are designed to attract capable counsel

notwithstanding comparatively low recovery. That means fee-shifting cases like these have different considerations from the traditional common-fund case. For these reasons, a lodestar analysis is most often the best way for a Court to assess the reasonableness of a requested fee in cases under fee-shifting statutes like the FLSA.

That said, the percentage and lodestar methods are more or less aligned for this particular settlement. "To calculate the lodestar, the court first determines counsel's reasonable hourly rate(s) and the number of hours that counsel reasonably expended on the case. The district court has some discretion regarding the rates and hours that are reasonable, but only when the court provides a clear and concise explanation of its reasons for the fee award. Multiplying reasonable rates times reasonable hours yields the lodestar." *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 616 (6th Cir. 2021) (cleaned up). Counsel here say they have expended 417.3 hours of attorney time, with an estimated 10 to 20 hours more to go. (ECF No. 60, PageID.451). The Court finds those hourly investments entirely reasonable. The alleged regular rate and off-the-clock issues affected approximately 11,000 employees spanning multiple jurisdictions. Assessing and verifying the relevant settlement groups and evaluating the potential claims and defenses available for each necessarily involved considerable effort. It is also apparent from the settlement papers that putting together a fair and workable deal required a lot of creativity and effort. The terms of the proposed Settlement Agreement reflect careful and thoughtful analysis of the necessary issues, and it is clear to the Court that post-approval work is likely necessary to ensure that the settlement is administered efficiently and fairly. Accordingly, in looking at a lodestar analysis, the Court finds 437.3 hours of attorney time to be a reasonable estimate.

The hourly rates sought are similarly reasonable. In his declaration, Attorney Kevin J. Stoops submits the following table:

| NAME | TOTAL HOURS | Hourly Rate | Fee Amount |
|---|---|---|---|
| Kevin Stoops | 88.6 | $750 | $66,450 |
| Jesse Young | 96 | $725 | $69,600 |
| Kate Milz | 61.1 | $350 | $21,385 |
| Alana Karbal | 2.2 | $350 | $770 |
| Debbie Nichols | 5.4 | $195 | $1,053 |
| David Quick | 124.8 | $195 | $24,336 |
| Patricia Ramirez | 3 | $195 | $585 |
| TOTALS | 381.1 | | $184,179 |

(ECF No. 60-3, PageID.506). Attorney Jonathan Melmed submits a similar declaration reflecting hourly rates of $948 for Mr. Melmed and $839 for Attorney Laura Supanich. (ECF No. 60-4, PageID.515). The Court finds that there is substantial basis—both in the attorney declarations and in the skill and dispatch demonstrated in this case—to justify the hourly rates sought by these attorneys and paralegals. While the more senior practitioners have requested fees above the 95th percentile for the Grand Rapids area ($625),[2] those fees are reasonable to compensate counsel for the experience and competence they demonstrated in this case, particularly when aggregated across associate and paralegal hours. Indeed, $530 is the applicable blended rate when accounting for the range of hourly fees for all timekeepers. This is well below the 95th percentile community market rate ($625) and the 95th percentile rate ($650) for Michigan's employment lawyers.

Thus, accepting counsel's 437.3-hour time estimate and $530 hourly rate results in $231,769 in attorney fees (437.3 hours x $530/hour). From there, a multiplier of just over 2.1 achieves the $491,666.66 fee contemplated here. And applying the 95th percentile rate of $650

---

[2] State Bar of Michigan, Economics of Law Survey Results 2023.

generates $284,245 in attorney fees (437.3 hours x $650/hour), meaning a multiplier of about 1.7. A multiplier within this range of 1.7 (the Court's lodestar) to 2.1 (counsel's claimed lodestar) is eminently reasonable under the caselaw and the circumstances of this case. *See, e.g.*, *O'Bryant v. ABC Phones of N. Carolina, Inc.*, No. 19-CV-02378-SHM-TMP, 2021 WL 5016872, at *6 (W.D. Tenn. Oct. 28, 2021) (observing that "lodestar multipliers between 1 and 3 are common" in "wage and hour collective and class actions" and deeming a multiplier of 1.97 "reasonable"); *Castillo v. Morales, Inc.*, No. 2:12-CV-650, 2015 WL 13021899, at *7 (S.D. Ohio Dec. 22, 2015) (approving a lodestar multiplier of 2.5).

Although the fee award here is reasonable, the Court pauses to note that the potential for conflict in these settlements reinforces the need for judicial oversight. As with most FLSA settlements, this attorney fee award directly affects the prospective opt-ins because every dollar of unapproved attorney fees is another dollar available for distribution to potential opt-ins. This is built into the formula for the net settlement fund. What's more, the general reversion clause in this Settlement Agreement means that the defendants will recoup any amount not claimed by the potential opt-ins. So in the case of a percentage basis, the plaintiffs' lawyers secure their fees against a theoretical maximum that may amount to considerably less in practice.[3] In the Court's view, these economic realities create an uncomfortable potential conflict between counsel and its prospective opt-in clients. While it is true that this particular setup avoids direct reversion of

---

[3] Available evidence suggests that opt-in participation rates in FLSA collective actions are consistently low. *See* Charlotte S. Alexander, *Would an Opt in Requirement Fix the Class Action Settlement? Evidence from the Fair Labor Standards Act*, 80 MISS. L.J. 443, 466 (2010) (finding opt-in rates in randomized set of 57 collective actions in the Southern District of Florida ranged from 0% to 48%, with a median of 15%); Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 BERKELEY J. EMP. & LAB. L. 269, 294 (2008) (finding opt-in rate of 15.71% for 21 analyzed cases).

unapproved attorney fee funds to the defendants, the dollar-for-dollar tradeoff between Plaintiffs' counsel and their own prospective opt-in clients is at least worthy of another set of eyes.

## CONCLUSION

The Court is satisfied that the proposed Settlement Agreement is fair and reasonable. The Court is also satisfied that the attorney fee award is sufficient to attract qualified counsel to undertake meritorious FLSA litigation, and is fair and reasonable to both counsel and their prospective opt-in clients.

**ACCORDINGLY, IT IS ORDERED** that:

1. The Court expressly adopts and incorporates all the terms of the Settlement Agreement (ECF No. 60-2) by reference here;

2. The Court retains jurisdiction to resolve any disputes regarding the administration and implementation of the Settlement Agreement and distribution of the settlement funds; and

3. Once the defendants meet their financial obligations under the Settlement Agreement, the parties will sign and submit a stipulated order dismissing this case with prejudice.

Dated:   July 15, 2025               /s/ Robert J. Jonker
                                     ROBERT J. JONKER
                                     UNITED STATES DISTRICT JUDGE